NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NABIL E. AMIN o/b/o M.A., | |
| Plaintiff, | |
| v. | Civ. No. 15-2184 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | OPINION |
| Defendant. | |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter has come before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final decision of the Acting Commissioner of the Social Security Administration denying Plaintiff Nabil E. Amin's application on behalf of his son M.A. for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff seeks a reversal or, in the alternative, remand of the Acting Commissioner's decision denying his request for Social Security benefits. (ECF No. 9). Defendant Acting Commissioner of Social Security ("Commissioner") seeks affirmance of her decision. (ECF No. 11). The Court has decided the appeal upon the submissions of both parties and without oral argument, pursuant to Local Civil Rule 9.1(f). For the reasons detailed below, the decision of the Commissioner will be affirmed.

1

BACKGROUND

On April 21, 2011, Plaintiff filed an application for SSI benefits on behalf of his son M.A., who was born in June 1997. (R. 35). M.A. has been found to suffer from an epileptic seizure disorder, a non-epileptic seizure disorder, and obstructive sleep apnea. (R. 372, 400-09, 557, 566). Plaintiff alleges that M.A. has been disabled since the date when Plaintiff first filed his application. (R. 17).

M.A. had his first seizure in May 2008 at age ten. (R. 372). An EEG of his brain revealed abnormal, potentially epileptogenic findings. (*Id.*). In response to this finding, M.A.'s doctors started him on the antiepileptic drug Trileptal at 300 milligrams three times per day. (*Id.*). M.A. tolerated the medication well, and his seizures were fairly well suppressed while on the medication. (*See, e.g.*, *id.*). Considering this, M.A.'s neurologist slowly increased M.A.'s medication to 600 milligrams twice per day. (R. 374). She also provided M.A.'s family with common seizure precautions such as no unsupervised swimming, high climbing, or playing with sharp objects. (*Id.*).

M.A. returned to the neurologist regularly and had no additional seizures until July 2010. (*See, e.g.*, R. 306-09, 315-19, 327-31). In July 2010 and November 2010, M.A. had seizures due to missing his medication. (R. 291). At that time, a sleep study also revealed mild sleep apnea. (R. 400-09). Then, in March 2011, M.A. had two breakthrough seizures.[1] (R. 286). M.A.'s doctors increased his medication to 900 milligrams twice per day, which suppressed M.A.'s seizures but resulted in excessive sleepiness, stomach upset, and memory problems. (R. 276). The doctors therefore reduced M.A.'s dosage back down to 600 milligrams twice per day, which

---

[1] Breakthrough seizures are seizures that occur despite the use of medication that has successfully controlled seizures for that patient in the past. American Academy of Orthopaedic Surgeons, *Emergency Care and Transportation of the Sick and Injured* 456 (Benjamin Gulli et al. eds., 9th ed. 2006).

2

M.A. tolerated well. (R. 271, 276, 280, 287).

M.A. had no further seizures until March 2012, when he had two seizures. (*See* R. 540-43, 547). M.A. had another seizure on April 18, 2012. (R. 549-50). At that time, Plaintiff reported that M.A. had had a seizure every day that week while at school. (*Id.*). However, M.A. only reported having had four seizures in the prior two weeks. (R. 564). An EEG returned normal results. (R. 571). Because M.A.'s seizures were so well controlled for years, stress from environmental triggers such as bullying and falling behind in school were considered to have triggered these non-epileptic seizures.[2] (R. 548, 557, 566). Although M.A. was referred to a psychiatrist to address the stress from these environmental triggers, Plaintiff did not take him to one because none would accept his insurance. (R. 571).

As a result of his seizures, M.A. was homeschooled from April 2012 to August 2012. (R. 61). M.A. testified that by homeschooled, he meant that teachers came to his home or the library to teach him on a one-on-one basis. (R. 72-73). In June 2012, M.A. had a brief seizure while in the library. (R. 571). However, in September 2012, M.A. returned to school. (R. 61). At the time of the hearing in October 2012, M.A. reported that he was doing well, receiving As and Bs. (R. 73, 78). He estimated that twice a month he did not feel able to attend school, but he usually just went to school anyway. (R. 75). There is no record of M.A. having any additional seizures.

Plaintiff filed the application for SSI benefits on behalf of M.A. on April 21, 2011. (R. 162-63). The application was denied initially and upon reconsideration. (R. 113-15, 119-21). After the denial, Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on October 22, 2012. (R. 32-93, 122). On March 21, 2013, the ALJ issued a

---

[2] Non-epileptic seizures, also known as pseudoseizures, are seizures that are caused by psychological stress rather than the sudden abnormal electric discharges in the brain that cause epileptic seizures. *See* Cleveland Clinic Epilepsy Center, *What are Non-Epileptic Seizures?* 1 (2008).

3

decision denying Plaintiff's application because M.A. did not have an impairment or combination of impairments that medically or functionally equals the Commissioner's Listings, as required for the awarding of benefits. (R. 17-28). Plaintiff sought review by the Appeals Council, and on January 22, 2015, the Appeals Council concluded that Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (R. 1-4).

On March 27, 2015, Plaintiff filed an appeal of the Commissioner's final decision with the U.S. District Court. (ECF No. 1). This appeal is currently before the Court.

## LEGAL STANDARDS

### A. Standard of Review

This Court reviews Social Security appeals under 42 U.S.C. § 405(g), which empowers this Court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court reviews questions of law de novo. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (2007). This Court reviews questions of fact under a "substantial evidence" standard of review. 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate." *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Where the ALJ's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently. 42 U.S.C. § 405(g); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012).

**B. Standard for Supplemental Security Income ("SSI") Determination**

Under the Social Security Act, the Social Security Administration is authorized to pay SSI benefits to "disabled" persons. 42 U.S.C. § 1382(a). A child, defined as any individual under the age of 18, is considered "disabled" if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security Administration engages in a three-step process to determine whether a child is disabled. 20 C.F.R. § 416.924. At step one, the ALJ assesses whether the child is currently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If so, the child is not considered disabled and, thus, the process ends. *Id.* If not, the ALJ proceeds to step two and determines whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Absent such an impairment or combination of impairments, the child is not considered disabled, and the process ends. *Id.* However, if the child has such an impairment or such a combination of impairments, the ALJ proceeds to step three. 20 C.F.R. § 416.924(a).

At step three, the ALJ determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment in the appendix ("the Listings"). 20 C.F.R. § 416.924(d) (referencing 20 C.F.R., Part 404, Subpart P, Appendix 1). An impairment or combination of impairments "medically equals" a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). An impairment or combination of impairments "functionally equals" a listed impairment if the child has either two "marked" limitations or one "extreme" limitation in the following domains: (1) acquiring and using information; (2) attending

5

and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A limitation is "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). Such a limitation is "more than moderate" but "less than extreme." *Id.* A limitation is "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). While an extreme limitation is "more than marked," it is not necessarily the equivalent of "a total lack or loss of ability to function." *Id.* In assessing whether an impairment or combination of impairments "functionally equals" a listed impairment, the ALJ considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance. 20 C.F.R. § 416.926a(a)(l)-(3).

If the child has an impairment that meets, medically equals, or functionally equals a listed impairment, the child is considered disabled under the Social Security Act, and he is entitled to Social Security benefits. 20 C.F.R. § 416.924(d)(1). The claimant bears the ultimate burden of establishing that he is entitled to benefits. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

## ANALYSIS

### A. The ALJ's Opinion

Following this three-step process, the ALJ found the following: (1) M.A. had not engaged in substantial gainful activity since the date of the application for benefits (R. 20); (2) M.A. suffers from severe impairments or combinations of impairments, including seizure disorder,

psychogenic non-epileptic seizures, and obstructive sleep apnea (*Id.*); and (3) M.A. does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one of the listed impairments (R. 20-21). The ALJ determined that M.A. does not have a combination of impairments that functionally equals the severity of one of the listed impairments because M.A. has "marked" impairment in health and physical well-being and "less than marked" impairment in the other five domains. (*Id.*). These findings resulted in a denial of SSI benefits. (R. 28).

### B. Plaintiff's Challenges to the ALJ's Opinion

Plaintiff makes two arguments attacking the ALJ's opinion. First, Plaintiff argues that the ALJ failed to combine and compare M.A.'s impairments in the medical equivalence analysis, resulting in an improper finding of no medical equivalence. (Pl.'s Br. 10, ECF No. 9). Second, Plaintiff argues that the ALJ cherry-picked the evidence in the functional equivalence analysis, resulting in an improper finding of no functional equivalence. (*Id.* at 10). The Court will address each argument in turn.

*1. The Medical Equivalence Analysis*

Plaintiff argues that the ALJ failed to combine and compare M.A.'s impairments for the medical equivalence analysis, resulting in an improper finding of no medical equivalence. Federal regulations and Third Circuit precedent require the ALJ to consider the claimant's combination of impairments and to "set forth" the reasons as to why that combination is not the medical equivalent of any of the listed impairments. 20 C.F.R. § 416.926(b)(3); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). However, the ALJ need not use any particular language or adhere to a particular format in conducting this analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the ALJ must provide sufficient explanation

to permit meaningful judicial review. *Id.* In *Jones*, the Third Circuit found an ALJ's analysis to be sufficient where the ALJ solely wrote that after "carefully compar[ing] the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments . . . the claimant's impairments do not meet or equal the criteria established for an impairment shown in the Listings." *Id.* at 503. Because the evaluation of medical equivalence is a fact-based question, the Court will review the ALJ's conclusions to see whether they are supported by substantial evidence.

> In reviewing M.A.'s case, the ALJ stated that
> 
> The claimant's impairments have been evaluated under all applicable Listings, including Section 111.00 et seq. of the Listings (including 111.02 and 111.03 relating to seizure disorders); 112.00 et seq. relating to psychological issues; and 103.00 et seq. relating to respiratory issues, and other relevant child and or adult listings. However, the requirements of these sections are not met because there is no evidence does not indicate [sic] that the claimant has the specific frequency and or severity symptomatology required by such listings.

(R. at 20). While the ALJ might have provided greater detail, the Court finds that the ALJ's explanation is sufficient to provide judicial review. The ALJ's assessment provides a comparable amount of analysis to the ALJ's analysis in *Jones*, which was found satisfactory by the Third Circuit. Therefore, the ALJ's opinion is not beyond judicial review.

The Court also finds that the ALJ's conclusion is supported by substantial evidence in the record. The ALJ notes that the claimant does not have the required frequency or severity of symptoms to medically equal the Listings. Regarding M.A.'s seizures, the record does not demonstrate that M.A. has seizures with the frequency required by Listings 111.02 and 111.03. Those Listings require that a claimant experience more than one major motor seizure per month or more than one minor motor

8

seizure per week. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 111.02(A), 111.03. According to the record, M.A.'s seizures began in May 2008 and returned in July and November 2010 due to missed medication. In 2011, M.A. experienced only two seizures. In March and April 2012, M.A. had three documented seizures, and M.A.'s seizures worsened and occurred more frequently for a short period of time. However, after M.A. was homeschooled in April 2012, M.A. experienced just one additional seizure in June 2012. Thus, with the exception of a short period in March and April 2012, M.A. did not experience more than one major motor seizure per month as required by Section 112.02(A) for a finding of medical equivalence.

The Listings also allow for a finding of medical equivalence if the child has had at least one seizure in the year before application for benefits where significant adverse effects of medication interfere with major daily activities. 20 C.F.R. pt. 404, subpt. P, app. 1 § 111.02(B)(4). M.A. did have at least one seizure in the year prior to application, and he did experience adverse effects, excessive sleepiness, due to medication that interfered with a major daily activity, schooling. This might lead to a finding of medical equivalence under this section of the Listings. However, the record also shows that adjusting M.A.'s medication dosages effectively solved the problem of excessive sleepiness. Therefore, when M.A. is on a suitable dosage of medication, adverse effects of the medication do not interfere with his major daily activities, and a finding of medical equivalence under this section is not supported by the record.

Regarding M.A.'s psychological issues, the record does not suggest that M.A. has been diagnosed with any of the listed disorders from Section 112.00. Even comparing M.A.'s psychological issues to those listed in Section 112.00, M.A.'s symptoms do not

9

show a comparable level of severity.  All of the disorders listed in Section 112.00 require a level of severity measured by functional limitations in motor function, cognitive/communicative function, social function, personal function, and concentration, persistence, or pace.  While M.A. reports missing school or feeling too unwell to attend school due to his seizure disorder, the record does not show severe functional limitations in motor function, cognitive or communicative functions, social functions, personal functions, or concentration, so long as M.A.'s medication is at a suitable dosage.  Therefore, M.A. did not experience the required level of severity for a finding of medical equivalence under Section 112.00.

And regarding M.A.'s obstructive sleep apnea, M.A.'s condition is characterized as "mild" and there is no indication in the record that M.A. suffers from the severe respiratory symptoms required by the listings for a finding of medical equivalence, such as growth failure or frequent need for mechanical ventilation.  Although Plaintiff's brief states that M.A. requires "nocturnal supplementary oxygen as required by persistent or recurrent episodes of hypoxemia," (Pl.'s Br. 12, ECF No. 9), which does appear in the listings, there is no evidence in the record to support the assertion that M.A. requires nocturnal supplementary oxygen.

The above analysis shows that M.A. does not experience the required frequency or severity of symptoms to support a finding of medical equivalence based on any of the reviewed sections of the Listings.  Even looking at M.A.'s impairments together, they do not equal the severity of any of the conditions in the any of the reviewed Listings.  Therefore, there was substantial evidence in the record to support the ALJ's findings, and this Court will uphold the ALJ's finding of no medical equivalence.

     2.     *The Functional Equivalence Analysis*

Plaintiff argues that the ALJ cherry-picked the evidence for the functional equivalence analysis, improperly finding that M.A. did not have marked limitations in three of the six relevant domains solely on the basis that M.A. was in school and earning good grades. Plaintiff also claims that the ALJ failed to adequately explain her conclusions.

As described above, an impairment or combination of impairments "functionally equals" a listed impairment if the child has either two "marked" limitations or one "extreme" limitation in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Because the evaluation of functional equivalence is a fact-based question, the Court will review the ALJ's conclusions to see whether they are supported by substantial evidence.

   In her analysis, the ALJ cites to M.A.'s testimony, multiple different doctors' records, Plaintiff's Function Report, and the assessment of the State Agency medical consultants. Considering that the ALJ utilizes a wide variety of sources from the record and clearly sets forth conclusions based on those sources, the Court finds that the ALJ adequately set forth her conclusions to allow for judicial review.

The ALJ's citation to these sources also shows that her conclusions are supported by substantial evidence. Although Plaintiff objects to the ALJ's repeated citations to the fact that M.A. was attending school and receiving good grades, Plaintiff points to no authority requiring the ALJ to cite different evidence for each domain. To the Court's knowledge, no such requirement exists. And given that M.A., like most children, spends much of his time at school, it is reasonable that much of the evaluation of M.A.'s functioning would be based on his

performance at school.  The ALJ used M.A.'s strong performance in school as the basis for finding of "less than marked" limitations in the domains of acquiring and using information, interacting and relating with others, and caring for oneself.  Because it would be difficult to perform well in school with marked limitations in these areas, M.A.'s strong performance in school provided substantial evidence for "less than marked" limitations in these three domains.

While the Plaintiff may disagree with the ALJ's conclusions, disagreement with the outcome of the ALJ's inquiry does not warrant remand or reversal, so long as the ALJ's conclusions are based on substantial evidence.  Because substantial evidence supports the ALJ's conclusions, Plaintiff's argument fails.

## CONCLUSION

For the reasons discussed above, the ALJ's decision will be affirmed.  An appropriate Order will follow.


*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.